IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

MYCONE DENTAL SUPPLY CO.,
INC., doing business as
KEYSTONE RESEARCH &
PHARMACEUTICAL,

    Plaintiff,

  v.

CREATIVE NAIL DESIGN, INC., ET
AL.,

    Defendants.

---

Civil Action
No. 11-4380 (JBS/KMW)

**OPINION**

APPEARANCES:

Ira A. Rosenau, Esq.
Klehr, Harrison, Harvey, Branzburg & Ellers, LLP
457 Haddonfield Road, suite 510
Cherry Hill, NJ 08002-2220
  Attorney for Plaintiff

Robert G. Shepherd, Esq.
Porzio Bromberg & Newman P.C.
29 Thanet Road, suite 201
Princeton, NJ 08540-3661
  -and-

Adam Hess, Esq.
Venable, LLP
575 7th St., NW
Washington, DC 20004
  Attorneys for Defendants

**SIMANDLE**, Chief Judge:

## I.  OVERVIEW

On July 28, 2011, Plaintiff Mycone Dental Supply Co., Inc.,

doing business as Keystone Research & Pharmaceutical

("Keystone"), filed a Complaint against Defendants Creative Nail

Design, Inc. ("CND"); Beauty Systems Group, LLC; East Coast Salon

Services, Inc.; and Emiliani Enterprises, Inc.[1] [Docket Item 1.]
The action concerns the manufacture, marketing, and sale of
cosmetic fingernail industry products, (Compl. ¶ 1), and it has
five counts:  (I) patent infringement against all Defendants,
(II) violation of § 43(a) of the Lanham Act against CND, (III)
violation of § 56:4-1 of the New Jersey Fair Trade Act against
CND, (IV) common law unfair competition against all Defendants,
and (V) unjust enrichment against all Defendants. (Compl. 2.)

This matter is presently before the Court on Defendants'
Motion to Dismiss Counts II-V of Plaintiff's Complaint. [Docket
Item 13.] For the reasons explained herein, the Motion will be
denied in part and granted in part: Counts II, III, and IV will
stand against CND; Count IV against the Distributors will be
dismissed without prejudice and with leave to file a motion for
amended pleading; Count V will be dismissed with prejudice as to
all Defendants.

## II. Background

### A.  Procedural History

On July 27, 2011, one day before Plaintiff filed this
action, the Defendants filed a declaratory judgment action in the
Southern District of California. Creative Nail Design, Inc. v.
Mycone Dental Supply Co., Inc., Civ. No. 11-1658 (S.D. Cal.

---

[1]The Court shall refer to Defendants Beauty Systems Group,
East Coast Salon Services, and Emiliani Enterprises collectively
as "the Distributors."

2

2011).  Both this Court and the Southern District of California received motions to dismiss or transfer to the other court. Because the California action began one day earlier, this Court stayed and administratively terminated this action until the California court decided the motion to dismiss or transfer. [Docket Item 41.]

The Southern District of California issued a decision finding that, although that action was filed first, it fell within the exception to the first-filed rule for actions that "evidence[] bad faith, anticipatory suit, or forum shopping." Creative Nail Design, Inc. v. Mycone Dental Supply Co., Inc., Civ. No. 11-1658, 3 (S.D. Cal. June 11, 2012).  The court ruled that "impos[ing] the first-to-file rule . . . would unreasonably penalize Keystone for its attempt to resolve this dispute without bringing the matter to Court," and it dismissed the declaratory judgment action with prejudice.  Id. at 5.  On June 12, 2012, Plaintiff notified this Court of the decision issued in the Southern District of California.  [Docket Item 42.]  The Court restored this action to active status on July 23, 2012 and heard oral argument on August 7, 2012.

**B. Factual Background**

Keystone alleges that it has invented "a substantially acid-free nail coating that forms a strong protective bond with the fingernail in a toxicologically and dermatologically safe

manner." (Compl. ¶ 1)  This nail coating product is "comprised of a substantially acid-free hydrophilic acrylate monomer gel," which Keystone promotes under the name "GEL POLISH."  (Id. ¶ 13.) Keystone has embodied its invention in United States Patent No. 5,965,147, which has "16 claims directed to substantially acid-free compositions containing at least one hydrophilic acrylate monomer and methods of using the compositions."  (Id. ¶ 17) There are three types of GEL POLISH nail coating products:  base, color, and top coats.  (Id. ¶ 14.)  Keystone's invention has many beneficial effects, including "form[ing] a strongly-bonded protective coating . . . that is toxicologically and dermatologically safe. . . ."  (Id. ¶ 16.)  The bonded protective coatings "eliminate the need to physically roughen the fingernail surface" before applying nail coatings.  (Id. ¶ 17.)

Keystone alleges that CND's sale of nail polish products under a brand named "SHELLAC" infringes upon Keystone's patent and that CND's marketing and advertising statements for the SHELLAC products are "false, misleading, and have the tendency to confuse the consuming public." (Id. ¶ 2)  CND has been "manufacturing, using, selling, importing and/or offering for sale the SHELLAC system products since approximately May 1, 2010, if not earlier."  (Id. ¶ 43.)

Like the GEL POLISH products, CND's SHELLAC line has three types of coatings:  base, color, and top coats.  (Id. ¶ 26.)

SHELLAC's base coat, like the GEL POLISH products, binds solidly with the natural nail. (Id. ¶ 27.)  In addition, the SHELLAC products are substantially acid-free and contain hydrophilic acrylate monomers, like the GEL POLISH products. (Id. ¶ 34.) Keystone therefore alleges that CND's products infringe Keystone's patent No. 5,965,147 and that this infringement is willful.  (Id. ¶ 44, 46.)  Keystone alleges that "CND's marketing statements falsely claim that CND created and owns the substantially acid-free fingernail coating technology that, in reality, Keystone invented and patented. . . ."  (Id. ¶ 50.)  In other words, Keystone alleges that, because it invented and patented these technologies, any statement from CND that it created and brought these technologies to the market is false and misleading.  The Complaint provides 14 examples of CND's statements, (Id. ¶¶ 50-51), and attaches examples in exhibits B and C.[2]

Keystone alleges that Defendants Beauty Systems Group, East Coast Salon Services, and Emiliani Enterprises all use, sell, or offer for sale CND's SHELLAC products.  (Id. ¶ 52.)  In addition, they are all "listed as an authorized distributor of CND's

---

[2]The Complaint actually lists 18 statements, but some of them are identical.  For example, paragraphs 50 and 51 both list "revolutionary, new hybrid color service for nails," "breakthrough, patent-pending UV3 technology," "[a] true innovation in chip-free, extended wear color," and "game-changing product." (Compl. ¶50-51.)  The Court therefore counts 14 unique statements.

SHELLAC products on CND's website," (Id. ¶ 53), and they all "advertise that they are dealers for CND and/or its SHELLAC products," (Id. ¶ 54).

Keystone alleges that CND is violating § 43(a) of the Lanham Act because its statements marketing the SHELLAC products are "literally and/or impliedly false, misleading, and likely to cause confusion." (Id. ¶ 69.)  CND's conduct has caused harm to Kaystone's business, sales, reputation, and goodwill. (Id. ¶ 72.)

Keystone also alleges that CND has violated the New Jersey Fair Trade Act, which prohibits a corporation from "appropriating for [its] own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such . . . corporation deals."  N.J. Stat. Ann. § 56:4-1.

Keystone alleges that all the Defendants have engaged in common law unfair competition through "misappropriation  and use of the invention embodied in [Keystone's] Patent and making false marketing claims. . . ."  (Compl. ¶ 81.)

Keystone alleges that all defendants have been unjustly enriched and have "obtained sales, profits, monetary and other unjust rewards" due to their wrongful acts.  (Compl. ¶ 86.)

### C.  Jurisdiction and Venue

Plaintiff brings this action under the United States Patent Act, 35 U.S.C. § 1, *et seq*, and the Lanham Act, 15 U.S.C. § 1051, *et seq.*  The Court has subject matter jurisdiction over these

claims because district courts have original jurisdiction over any civil action relating to federal questions and to patents. 28 U.S.C. §§ 1331, 1338(a).  And because the state law claims relate to the same transactions as the patent and Lanham Act claims, supplemental jurisdiction is also proper over those claims pursuant to 28 U.S.C. § 1367.  Keystone alleges that venue is proper because CND and the other defendants do business in this judicial district and are subject to personal jurisdiction here.  (Compl. ¶¶ 11-12.)

**D. The Motion to Dismiss**

Defendants filed a motion to dismiss Counts II-V of Keystone's Complaint under Rule 12(b)(6).

With regards to Count II, which alleges violations of § 43(a) of the Lanham Act, Defendants argued Keystone did not (1) state the Lanham Act subsection under which its claims arose[3], (2) allege facts sufficient to show that it had a plausible claim to relief under either Lanham Act subsection, and (3) meet the

---

[3]Plaintiff clarified, in its Opposition to Defendants' Motion to Dismiss [Docket Item 20], that Count II of the Complaint is brought under § 43(a)(1)(B) of the Lanham Act.  The Court will not, therefore, consider any claims under § 43(a)(1)(A). Plaintiff also noted that Defendants did not cite any cases for the argument that failure to cite a statute's subsection merits dismissal and that the Complaint focuses on false marketing, thus giving Defendants notice of the claim's nature. (Pl.'s Opp'n to Def.'s Mot. Dismiss 5-6.)  Given that Defendants' Motion to Dismiss extensively discussed the § 43(a)(1)(B) claim's flaws, the Court does not find that Defendants have been prejudiced such that Plaintiff's failure to specify the Lanham Act subsection merits dismissal.

heightened pleading requirements for Lanham Act claims under §
43(a)(1)(B). (Def.'s Mot. Dismiss 2.)

Defendants also argue that Count III, which alleges that CND
violated the New Jersey Fair Trade Act, and Count IV, which
alleges that all Defendants committed common law unfair
competition, also merit dismissal because those bodies of law are
equivalent to § 43(a) of the Lanham Act, under which Keystone
failed to state a claim for relief.  (Def.'s Mot. Dismiss 8-9.)
In addition, Count IV implicates all of the Defendants, not just
CND, but the Plaintiff did not provide any information about the
marketing or advertising practices of any defendants except for
CND.  (Id. 9.)  And finally, they argue that Count V, which
alleges unjust enrichment against all Defendants, merits
dismissal because Keystone has not alleged any relationship with
the Defendants that "would create a reasonable expectation that
Keystone would be compensated."  (Id. 10.)

**III. DISCUSSION**

    **A.  Standard of Review**

A motion to dismiss under Federal Rule of Civil Procedure
12(b)(6) may be granted only if, accepting all well-pleaded
allegations in the complaint as true and viewing them in the
light most favorable to the plaintiff, a court concludes that
plaintiff has failed to set forth fair notice of what the claim
is and the grounds upon which it rests. Bell Atlantic Corp. v.

<u>Twombly</u>, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663(2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 678.

Additionally, "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 236 (3d Cir. 2008).

### B.   Analysis

#### i.   Count II: Violation of Lanham Act § 43(a)(1)(B)

Keystone alleges that Defendant CND has violated Lanham Act § 43(a)(1)(B). (Compl. ¶¶ 68-74; Pl.'s Opp'n to Def.'s Mot. Dismiss 5-6.) False advertising is prohibited under § 43(a)(1)(B), which reads in relevant part:

> (1) Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-
>
> ...
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services,

or commercial activities, shall be liable in a civil
action by any person who believes that he or she is or is
likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

To establish a Lanham Act claim based on false or misleading

representations in commercial advertising a plaintiff must

allege:

> 1) that the defendant has made false or misleading
> statements as to his own product or another's; 2) that
> there is actual deception or at least a tendency to
> deceive a substantial portion of the intended audience;
> 3) that the deception is material in that it is likely to
> influence purchasing decisions; 4) that the advertised
> goods traveled in interstate commerce; and 5) that there
> is a likelihood of injury to the plaintiff in terms of
> declining sales, loss of good will, etc.

Warner-Lambert Co. v. BreathAsure, Inc., 204 F.3d 87, 91-92 (3d

Cir. 2000).  The Plaintiff need not prove element two if the

advertisement is false:  "If an advertisement is literally false,

the plaintiff does not have to prove actual consumer deception."

Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 171 (3d

Cir. 2001).

Several other Third Circuit district courts that have

assessed § 43(a)(1)(B) claims have applied an "intermediate"

pleading requirement that is in between the requirements of

Federal Rules of Civil Procedure 8 and 9. See e.g. Wellness

Publ'g v. Barefoot, 2008 WL 108889 (D.N.J. Jan.9, 2008), EVCO

Tech. & Dev. Co., v. Buck Knives, Inc., 2006 WL 2773421 (E.D.Pa.

Sept.22, 2006). The district courts found that the heightened

pleading requirement is necessary in Lanham Act claims because when "one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense." Max Daetwyler Corp. v. Input Graphics, Inc., 608 F.Supp. 1549, 1556 (E.D.Pa. 1985).

Most of the cases describing heightened pleading requirements for Lanham Act claims predate the changes in pleading standards that arose with the Supreme Court's Twombly and Iqbal jurisprudence.  The Third Circuit commented that, as a result of the Iqbal and Twombly jurisprudence, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The Court believes that the "heightened" or "intermediate" pleading requirements that many courts imposed for Lanham Act claims may very well be identical to the pleading requirements that all claims must now meet after Iqbal, Twombly, and Fowler. But the Court need not conclusively decide whether heightened pleading requirements for Lanham Act claims are a relic of the past because, in this case, the Plaintiff has satisfied pleading requirements under Rule 8 and under any

heightened, intermediate standard that may exist.

CND argues that heightened pleading standards are required and that Keystone did not meet them because Keystone did not "show why [CND's marketing] statements are allegedly false." (Def.'s Mot. Dismiss 7.)  CND argues that even if it was infringing Keystone's patent, such infringement would not

> foreclose the fact that CND independently developed the SHELLAC . . . system, or that the SHELLAC . . . system is a unique product, or that CND filed patent applications to protect the SHELLAC . . . system.  Each of these statements could be true . . ., and Keystone has not provided any coherent factual support for its conclusory allegations that these statements are in fact false.

(Def.'s Mot. Dismiss 5.)  These theories are all possible defenses that CND may choose to raise later in this litigation. CND is correct that Keystone has not foreclosed these theories, but the Plaintiff need not disprove defense theories at the motion to dismiss stage. Under Rule 8, a complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. at 663.  Even Rule 9 does not require plaintiffs to disprove defendants' possible theories; it simply requires a party to "state with particularity the circumstances causing fraud. . . ." Fed. R. Civ. P. 9(b).  Keystone has alleged facts sufficient to create a plausible patent infringement claim.  The Court assumes, as it must at this procedural posture, that Keystone's patent is valid and

12

enforceable, that Keystone created and patented these unique nail technologies and, therefore, that any statement that CND created or brought them to the market is false.  E.g., Compl. ¶¶ 19, 50-51.

CND also erroneously argues that dismissal is warranted because Keystone did not provide information about when and where CND made the marketing statements.  (Def.'s Mot. Dismiss 7.) As support for this argument, CND improperly cites Eli Lilly & Co. v. Russel Corp., 23 F. Supp. 2d 460, 491 (D.N.J. 1998), citing a section that merely discusses common law fraud and the importance of "precise allegations of date, time, or place" under Rule 9(b). Keystone has not made a common law fraud claim; the Rule 9 pleading requirements do not apply.[4]

The Court is also not persuaded by CND's argument that Keystone failed to provide information about the marketing statements' "alleged intended audience."  (Def.'s Mot. Dismiss 7.)  It has been held that "'to pass the pleading threshold in a

_____

[4] In fact, the Court finds that Defendants' explanatory parenthetical describing their citation to Eli Lilly at 491 is inappropriate.  The parenthetical states, "(holding that the Lanham Act pleading requirements may be satisfied if the complaint describes the circumstances of the fraud with precise allegations of date, time or place.)"  (Def.'s Mot. Dismiss 7.) Page 491 of Eli Lilly outlines a common law fraud claim and specifically states, "The requirements of Rule 9(b) may be satisfied if the complaint describes the circumstances of the alleged fraud with precise allegations of date, time or place." Eli Lilly at 491.  The Court sees no reference to the Lanham Act or to Lanham Act pleading requirements on page 491.  Counsel is reminded to be more careful with citations in the future.

13

Lanham Act § 43(a)(1)(B) case, a plaintiff at the very least must identify some medium or means through which the defendant disseminated information to a particular class of consumers.'" <u>Trans USA Products, Inc. v. Howard Berger Co., Inc.</u>, Civ. No. 07-5924 (JAP), 2008 WL 852324 (D.N.J. Mar. 28, 2008) (quoting <u>Podiatrist Ass'n v. La Cruz Azul De Puerto Rico, Inc.</u>, 332 F.3d 6, 19-20 (1st Cir. 2003)). But the "particular class of consumers" requirement pertains to whether the challenged speech constitutes commercial advertising.  For example, in <u>Trans USA</u> which is cited above, the Court granted Defendants' motion to dismiss because, <em>inter alia,</em> the plaintiff did not "allege or indicate any particular advertising or promotional medium other than the markings on the product."  Trans USA at *6.  In addition, in <u>Podiatrist Ass'n,</u> the case that <u>Trans USA</u> quotes, the court held that there was a lack of commercial advertising because plaintiffs' allegations pertained to misinformation and disparaging comments that Defendants shared with certain customers.  The court held: "To constitute advertising or promotion, commercial speech must at a bare minimum target a class or category of purchasers or potential purchasers, not merely particular individuals."  <u>Podiatrist Ass'n</u> at 19.  In this case, Plaintiff Keystone has alleged that CND "falsely advertises" and makes statements that are "false, misleading, and have the tendency to confuse the consuming public." (Compl. ¶ 2.)

14

Keystone attached some examples of these statements to its
Complaint and, at oral argument on this motion, Keystone provided
Defendants with copies of other statements from CND's own
marketing brochures, website, and Facebook page. It is clear that
CND's statements of which Keystone complains were made in the
commercial advertising context, not in the context of
communications with particular individuals.

In short, the Court finds that Keystone has alleged a
plausible claim for relief against Defendant CND with regards to
Count II. CND's motion to dismiss Count II, violation of §
43(a)(1)(B) of the Lanham Act, will be denied.

### ii.  Count III:  New Jersey Fair Trade Act Violation

Plaintiff alleges that Defendant CND has violated the New
Jersey Fair Trade Act.  (Compl. 15.)  N.J. Stat. Ann. § 56:4-1
(West 1989) codifies New Jersey's "common law authority of unfair
competition." Nat'l Football League Props., Inc. v. New Jersey
Giants, Inc., 637 F.Supp. 507, 519 (D. N.J. 1986). The statute
proscribing unfair competition provides:  "No merchant, firm or
corporation shall appropriate for [its] own use a name, brand,
trademark, reputation or goodwill of any maker in whose product
such merchant, firm or corporation deals."  N.J. Stat. Ann. §
56:4-1.

The elements of unfair competition under N.J.S.A. § 56:4 and
New Jersey common law are the same as those required under the

Lanham Act.  The Third Circuit stated "except for the interstate commerce requirement [of the Lanham Act], the elements of the unfair competition torts proscribed by New Jersey law and by section 43(a) of the Lanham Act are the same ..."  SK & F, Co. v. Premo Pharm. Laboratories, Inc., 625 F.2d 1055, 1066 (3d Cir. 1980).[5]  Therefore, the Court "need not repeat the factual discussion as to the likelihood of success on the merits."  Cf. Id. (the court held that it need not repeat the analysis for the Lanham Act claim when it already conducted the same analysis for the state unfair competition claim).

As discussed above, the Plaintiff's Lanham Act claim against CND will stand.  Because the analysis is the same for the New Jersey Fair Trade Act, CND's motion to dismiss Count III shall also be denied.

### iii. Count IV: Common Law Unfair Competition

Plaintiff alleges that all Defendants have engaged in common law unfair competition.  (Compl. 16.)  Plaintiff specifically alleges, "Defendants have engaged in unfair competition by misappropriation and use of the . . . '147 Patent and making

_____

[5]It is not entirely clear to the Court that the Lanham Act analysis applies to New Jersey statutory and common law unfair competition claims that revolve around patent infringement and false advertising, without any allegations of misappropriation of "name, brand, trademark, reputation, or goodwill."  See N.J. Stat. Ann. § 56:4-1.  But since both Plaintiff and Defendants agree that the analysis is the same (Pl.'s Opp'n to Def.'s Mot. Dismiss 10; Def.'s Mot. Dismiss 8-9), the Court will not dispute it.

false marketing claims related to its [sic] SHELLAC product. . . .." (Compl. ¶ 81.)  Defendants note that "Keystone's Complaint fails to provide any facts related to the alleged marketing or advertising of Defendants other than CND." (Def.'s Mot. Dismiss 9 (emphasis in original).)

As section ii above explains, the analysis for a New Jersey common law unfair competition claim is the same as the Lanham Act analysis.  In its Opposition to the Motion to Dismiss, Keystone states, "unfair competition claims . . . are analyzed in the same manner as claims asserted pursuant to the Lanham Act. . . . Keystone sufficiently pleaded its false advertising claims under § 43(a)(1)(B) of the Lanham Act, and therefore, its allegations under Counts III and IV are also sufficiently pleaded." (Pl.'s Opp'n to Def.'s Mot. Dismiss 10.) CND's motion to dismiss Plaintiff's Lanham Act claim will be denied and, therefore, the motion to dismiss Count IV against CND will also be denied.

But Keystone's allegations regarding CND's false advertising statements do not implicate the other Defendants.  Keystone alleges that Defendants Beauty Systems Group, East Coast Salon Services, and Emiliani Enterprises ("the distributors") all use, sell, or offer for sale CND's SHELLAC products, (Compl. ¶ 52.); CND lists them as authorized distributors of its products, (id. ¶ 53); and they all "advertise that they are dealers for CND and/or its SHELLAC products," (id. ¶ 54).  Keystone has not alleged that

17

any Defendants other than CND made false or misleading advertising statements.  The Court cannot therefore find that the unfair competition claim will stand against the other Defendants based on Keystone's pleadings regarding the Lanham Act.

In its Opposition, Keystone asserted that "unfair competition under New Jersey law involves the misappropriation by another of property which has some sort of commercial or pecuniary value." (Pl.'s Opp'n to Def.'s Mot. Dismiss 10.) Keystone alleged in its Complaint that Defendants have engaged in common law unfair competition through "misappropriation  and use of the invention embodied in [Keystone's] Patent. . . ."  (Compl. ¶ 81.)  The Court finds that these allegations do not provide sufficient factual matter to show that the claim is facially plausible.  Keystone alleges that, even though the Lanham Act analysis does not apply, Count IV should still stand against the distributors because unfair competition involves "misappropriation" and the Defendants engaged in "misappropriation." These conclusory statements simply will not do.  See Ashcroft v. Iqbal, 556 U.S. at 678.

Defendants' Motion to Dismiss Count IV, unfair competition, against the Distributors will be granted with leave for Plaintiff to file a motion for amended pleading.

### iv.  Count V:  Unjust Enrichment

Plaintiff alleges that all Defendants have been unjustly

18

enriched.  (Compl. 16.)  In New Jersey, to assert a claim of unjust enrichment a plaintiff must show that "it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty, 135 N.J. 539, 554 (1994) (citations omitted).  A plaintiff must allege that a "direct relationship existed between the parties which would create reasonable expectation of benefit."  Fasching v. Kallinger, 211 N.J. Super. 26, 35 (App. Div. 1986).

Plaintiff has not alleged any relationship between it and the Defendants, nor has it alleged that it had any reason to expect remuneration from Defendants.  Plaintiff argues that "New Jersey law does not in every case require that there be a direct relationship between the parties for unjust enrichment to apply." (Pl.'s Opp'n to Def.'s Mot. Dismiss 11.) Keystone further alleges that "New Jersey courts have applied unjust enrichment when there has been some unknown misappropriation against the Plaintiff." (Id. 11.)

Keystone cites three cases to support this assertion, but the Court finds that all three cases are inapplicable or inapposite. In Kruvant v. 12-22 Woodland Ave. Corp., 138 N.J.Super. 1 (App. Div. 1975), the New Jersey Appellate Division held that a horseback riding club had established a prescriptive

19

easement for a trail crossing private land. The Court held,
however, that the landowners were entitled to some compensation
because "where a person uses the land of another to carry on
profit-making activities, without permission, the landowner
should be able to recover a reasonable rent." (Id. at 25.)   There
is no trace of an unjust enrichment claim or discussion in the
Kruvant opinion. The Court cannot disregard the New Jersey
Supreme Court's holding in VRG Corp. or the Appellate Division's
holding in Fasching on the basis of an adverse possession case
that does not discuss unjust enrichment and that predates VRG
Corp. and Fasching by 19 and 11 years, respectively.

Keystone also cites Callano v. Oakwood Park Homes Corp., 91
N.J.Super. 105 (App. Div. 1966), a case involving a plant nursery
that delivered and planted shrubbery pursuant to a contract with
a man who intended to purchase a lot.  The prospective lot-owner
never paid the nursery and subsequently died. The developer
retained the land, and the nursery sued the developer.  The
Appellate Division held that the nursery owner had no claim
against the developer and instead should have sued the
prospective lot-owner's estate. It found that the nursery owners

> had no dealings with defendant, and did not expect
> remuneration from it when they provided the shrubbery. .
> . . [W]e believe it would be inequitable to hold
> defendant liable. Plaintiff's remedy is against [the
> prospective lot-owner's] estate, since they contracted
> with expected payment to be made by [the lot-owner] when
> the benefit was conferred.

Id. at 110.  The Court finds that Callano contradicts Keystone's assertions and, instead, supports the proposition that there must be a relationship and an expectation of remuneration for an unjust enrichment claim to lie.

And finally, Keystone cites Phoenix Container, Inc. v. Samarah, 130 Fed.Appx. 539 (3d Cir. 2005), a non-precedential Third Circuit case upholding summary judgment on an unjust enrichment claim against the holding company of a former corporate officer who embezzled $437,250 from the plaintiff corporation. The plaintiff corporation argued that the holding company benefitted from the corporate officer's conversion because the officer used the embezzled funds to pay the holding company's debts. The holding company denied that it benefitted, but the Third Circuit held that it failed to show that there was a genuine issue for trial. The Court acknowledges that Phoenix Container does not flesh out whether there was a relationship between the plaintiff corporation and the holding company, but the Court notes that this opinion has only five paragraphs and the Third Circuit stated that is it was "writ[ing] solely for the parties." The Court will not base its unjust enrichment analysis on a 5-paragraph, unpublished, Third Circuit decision that was written "solely for the parties" and that makes its holding based on the burden of showing genuine issues of fact to survive summary judgment.

21

In short, Keystone's assertions that unjust enrichment claims do not require a relationship between the parties have not persuaded the Court. Count V, which alleges unjust enrichment against all defendants, is dismissed with prejudice and without leave to amend.  Plaintiff has not pled or suggested in its briefing any indication that any relationship or expectation ever existed and, therefore, amendment would be futile.

**IV. Conclusion**

Defendants' dismissal motion will be denied in part and granted in part: Counts II, III, and IV will stand against Defendant CND; Count IV against the Defendant Distributors will be dismissed without prejudice and with leave to seek to amend; Count V will be dismissed with prejudice as to all Defendants.


**August 16, 2012**                  **s/ Jerome B. Simandle**
Date                           JEROME B. SIMANDLE
                               Chief U.S. District Judge